Shaokelfokd, J.,
delivered tbe opinion of tbe Court.
Tbis bill was filed by tbe heirs of Michael Bower-man, to enforce tbe collection of two notes, for about $1,750, which tbe complainants alleged were given *411 for tlie purchase money of a tract of land, "bought by the defendant, Jesse Millikin.
The facts presented by the record' are: In 1853, Samuel Bowerman, the son of Michael Bowerman, was arrested for horse stealing in the county of Williamson, and placed in jail by the authorities. Michael Bowerman became bail for his son, in the sum of $1,000, for his appearance to answer the charge. Within a few days after his return to Cannon county, where he resided, he sold the tract of land on which he lived, (245 acres,) to the defendant, Jesse Millikin, for $1,750, and gave him a deed for the land, in which the receipt of the purchase money is acknowledged. The deed was duly registered. He removed, in a few days, to the State of Kentucky, with his family. The recognizance was forfeited.
It appears from the record, at the time the sale was made, the notes were transferred to Milton Bowerman, Michael remarking, “that the State could garnishee him.” A bill was filed in the Chancery Court at Woodbury, to subject the land to the payment of the recognizance. About this time, Albert Gr. Millikin went to Kentucky for the notes, and received them. The suit, on the part of the State, was compromised, and dismissed. The proof of the complainants, consists, principally, of the acknowledgement of Jesse Millikin and A- Gr. Millikin, in .which it clearly appears, the notes were returned to Millikin, to enable him to defeat the suit of The State vs. Bowerman, in the Chancery Court. In the record, there is no proof of the *412 payment of the money on the notes. Michael Bower-man is dead, and the suit is prosecuted in the name of his widow, administrator, and heirs. There was a decree for the sale of the lands, for the payment of. the notes, from which the defendants have appealed to this Court.
We are satisfied, from the proof, the sale of Michael Bowerman to 'defendant, Jesse Millilrin, was made for the purpose of defeating the recognizance he was under for his son. . Men never act without a motive; and to arrive at correct conclusions, we must look to their acts. Bowerman’s son is in prison for a high crime; he became his bail for $1,000, for his appearance at Court; takes his son home with him; a few days thereafter, he sells his • home, a tract of land of two hundred and forty-five acres, to defendant, for $1,750; executes an absolute deed for the same to defendant; acknowledges the payment of the purchase money, and removes, with his family, from the State. The recognizance is forfeited; suit is commenced on his bond; the notes are sent to defendant to defeat the suit. This is a part, evidently, of the original agreement. The State is defeated; the object is accomplished. Can there be any doubt the object and purpose of the sale, was, to defeat the collection of the bond he had given, as the security for his son’s appearance. His heirs and administrator now invoke the aid of a Court, to collect a debt growing out of this transaction, and enforce a specific execution of a contract thus made. The law is well settled, a suit *413 will not lie to enforce a contract, that is made in ■violation of a Statute, or of the common law, against public policy; 3 Head, 298. It is a well settled principle of legal rule, where the parties have been guilty of, or contemplated in, the particular matter, some fraudulent, criminal, or immoral act, or where it is against public policy, the Courts will not interfere, but leave the parties without redress, whatever claim they may have on each other: (3 .Head, 95.) And if the party has been guilty of such conduct as would repel him, his heirs, widow, and administrator, will, also, be repelled.
It is insisted for the plaintiff, though it should appear the transaction was 'against public policy, yet if the fact existed, a Court of Chancery would entertain the case for the sake of the public, and place the parties where they were. The case in 2 Head, 618, is relied on to sustain the position. We recognize the principle of that case as correct. Courts of equity will grant relief in particular transactions, whenever, by public policy, relief may be given in equity to a particeps criminis, but the relief is' always given in aid of, not subversive of, public policy. That case was one of gaming. A bill was filed to have securities delivered up. The Court held, in view of public policy, to suppress gaming, the complainant would not be refused, merely on the ground that he was a particeps criminis. The Court said, that in cases of violation of public policy, it is indifferent who stands before the Court, because the Court does not regard the state' and condition of the parties, so *414 much as the nature of the contract and the public good. This principle was settled in 2 Yer., 525, in the elaborate opinion of Judge White. The authorities are several, and the principle is, where a Court of Chant eery gives relief in such cases, it always is in aid of public policy. In the case of Ale in vs. Dodd., 4 Hum., 133, the distinction is drawn between cases in which Courts will grant relief. The Court says: “That although both are in fault, they stand in a different relation to the transaction; and the policy and interest of the community, are in favor of permitting the one party to set aside the transaction — without which it would have been in vain to have declared it illegal— as contracts of a usurious character; and a distinction in many cases, has been recognized between cases on the one hand, affected by illegality merely, and cases on the other hand, where the contract was malum in se — immoral or contrary to public policy — a party in the former case being permitted, after a contract is executed or commuted, to invoke the .aid of a Court, to set it aside or redress himself; and in the latter case, being repelled from a Court of Justice, on the ground that being equally derelict in the transaction towards society, with the party complained of, the Court will not hear his cause and grant relief; not because his adversary is not to blame, or equally to blame, but because he having violated good morals and law, shall not be heard to allege, that his very cause of action and claim to relief, are based upon the fact of such violation of law and morals.” From the facts of this record, the ancestor of the com *415 plainant, in eopveying liis property to defeat the recognizance, was guilty of such a violation of public morals, as repels him from a Court if he were- suing; and his widow and heirs, representing and .claiming through him, are repelled hy reason, of his fraudulent acts. It is insisted by the counsel of the complainants, the facts show that illegal transactions are developed by- the defendant, and he should not be heard to declare his own turpitude, he being a particeps criminis. The defendant, not because of any favor to him, but because he is such, can, upon well settled principles, allege and show the fraudulent character of the contract; and the plaintiff in the proof taken, introduced the admissions of defendants, which fully establish the character and nature of the contract. In the view we have of the law controlling this case, it is unnecessary to decide the other question raised.
The decree of the Chancellor is reversed, and the bill dismissed.